UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MARK GRIFFIN, | ) | CASE NO. 1:05 CV 1502 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| v. | ) | |
| | ) | |
| OFFICER FAIRBANKS-MILLS, et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

On May 26, 2005, plaintiff pro se Mark Griffin filed this action under 42 U.S.C. §1983 against Mansfield Correctional Institution ("MANCI") Corrections Officer Fairbanks-Mills, MANCI Corrections Sergeant Hicks, MANCI Lieutenant Young, MANCI Warden Margaret Bradshaw, MANCI Institutional Inspector Sharon Berry, Ohio Department of Rehabilitation and Correction ("ODRC") Director Reginald Wilkinson, and ODRC Chief Inspector Cheryl Jorgenson-Martinez. In the complaint, plaintiff asserts that the defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights. He seeks injunctive and monetary relief.

### *Background*

Mr. Griffin claims his cell was searched while he and his cellmate were in the dining hall

for lunch on January 27, 2005. When they arrived back to their cell, they found it in disarray. Other inmates informed them that Officer Fairbanks-Mills had been in the cell conducting a "shakedown." Mr. Griffin claims the drawers were overturned and left on the beds. All of his property and all of his cellmate's property, including personal hygiene products, toothbrushes, clothes, bed linens, and legal materials, were mixed together on the floor of the cell, the beds, and the cabinet. He describes the cell as "ransacked." (Compl. at 4.)

Mr. Griffin states he went to the officer's desk and asked to see a sergeant, lieutenant, or captain. (Compl. at 4.) Officer Fairbanks-Mills refused to summon a superior office; however, another corrections officer called Sergeant Hicks. Mr. Griffin contends that Sergeant Hicks witnessed the scene and attempted to provide an explanation for the search by indicating that he had ordered it. Mr. Griffin informed him that the search was in violation of prison policy which required the cell's inhabitants to be present during the search. He also noted that personal property is not generally thrown around the cell during the search. He claims Sergeant Hicks merely replied that the search was legitimate. Mr. Griffin asserts that proper procedures were not followed and he was denied due process.

As a result of the search, Mr. Griffin and his cellmate had a difficult time sorting through their personal property. Mr. Griffin claims that he discovered, two days after the search, that he had been using his cellmate's toothbrush. He claims he purchased a new toothbrush from the commissary, and reported to sick call for a blood test to determine whether he had contracted any infectious diseases as a result of the mix-up. He contends that by carelessly handling his personal hygiene items during the search, the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Finally, Mr. Griffin alleges the search was conducted to retaliate against him for pursuing a legal claim against the prison. He indicates that just two days before the search, he had requested copies of his medical records which he intended to use in a civil trial scheduled for February 2, 2005. He claims that the timing of the search and the manner in which it was conducted indicate Officer Fairbanks-Mills was looking for his legal materials in order to destroy them. He states the officer was unable to find his legal materials because they were kept in other inmates' cells to prevent interference with the trial. Mr. Griffin asserts that the search violated his First Amendment right.

## Analysis

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments

3

concerning exhaustion, the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. Grievances against the Warden or Institutional Inspector must be filed directly to the office of the Chief Inspector within thirty calendar days of the event giving rise to the complaint. OHIO ADMIN. CODE § 5120-9-31(L). Such grievances must show that the Warden or Institutional Inspector was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation. OHIO ADMIN. CODE § 5120-9-31(L) The decision of the Chief Inspector is final. OHIO ADMIN. CODE § 5120-9-31(L).

There is no indication that Mr. Griffin exhausted his administrative remedies with respect to each claim asserted against each defendant. He alleges that he filed an Informal Complaint Resolution form with Ms. Fairbanks-Mills's supervisor who forwarded the document to Lieutenant Young. He states Lieutenant Young returned it without an answer. He indicates he then filed a formal Notification of Grievance with the Institutional Inspector, who he contends denied the grievance without conducting an

investigation.  He appealed that decision to the Chief Inspector.  He does not indicate whether he received a decision on that appeal.  Mr. Griffin does not clarify the content of these grievances and does not specify against whom they were asserted.  While the court may infer from the fact that the Informal Complaint Resolution form was sent to Ms. Fairbanks-Mills's supervisor that Ms. Fairbanks-Mills was mentioned in the grievance, the court cannot make this inference with regard to Sergeant Hicks or Lieutenant Young. In fact, Lieutenant Young appears to have been named as a defendant in this action because he did not address that Informal Complaint Resolution in the manner that Mr. Griffin believed was appropriate.  It therefore is unlikely that Lieutenant Young was named in that Informal Complaint.  Mr. Griffin would have had to file a separate grievance against him.  There is no indication in the pleading that Mr. Griffin filed any additional grievances.  Moreover, there is a separate grievance procedure for claims asserted against the Warden and the Institutional Inspector.  Both of these individuals are named in this complaint.  Mr. Griffin does not suggest that he filed these grievances.

In the past, the court would simply dismiss the claims which are unexhausted and proceed with those claims that have met the requirements of 42 U.S.C. § 1997e.  This course of action, however, is no longer available.  The United States Sixth Circuit Court of Appeals recently adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e. See Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005).  Under this rule, a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety for failure to exhaust administrative remedies.  Bey, 407 F.3d at 806-07.  The district court no longer has the option of dismissing just the unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process.  Id.  A prisoner whose "mixed" complaint was dismissed may either wait until all of his claims

5

have been exhausted to file his action, or file a new action which contains only the exhausted claims. Id. at 808. Because Mr. Griffin has not demonstrated that he filed grievances for each of his claims against each of the defendants, the court is required by the rule of total exhaustion to dismiss the complaint in its entirety without prejudice.

## Conclusion

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

                                                s/ Kathleen M. O'Malley
                                                KATHLEEN M. O'MALLEY
                                                UNITED STATES DISTRICT JUDGE

DATED: July 27, 2005

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.